<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| STEVEN BELKOWSKI, : | |
| : | |
| Plaintiff, : | Civil Action No. 05-4516 (SRC) |
| : | |
| v. : | **OPINION** |
| : | |
| JO ANNE B. BARNHART, : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| : | |
| Defendant. : | |

---

**<u>Chesler, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff, Steven Belkowski ("Belkowski"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that he is not eligible for Social Security Disability Benefits under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

**I.  BACKGROUND**

The following facts are undisputed. Belkowski was born on December 17, 1951. He has a high school education and has worked as a truck driver. On April 30, 2003, he filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income, alleging disability since May 20, 2001 due to a back disorder, vertigo, and hypertension. Plaintiff

alleges that he has developed disabling right knee pain since filing the application.

Belkowski's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Edward J. McNeil (the "ALJ") on July 28, 2004, who denied Plaintiff's claim in an unfavorable decision issued August 25, 2004.  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security.  On September 15, 205, Plaintiff filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its

2

conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

B.      Standard for Awarding Benefits Under the Act

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

C.    The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

4

experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5

Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an

individual is disabled.  20 C.F.R. § 404.1569; <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  <u>See</u> <u>Williams v. Barnhart</u>, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While <u>Burnett</u> involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in <u>Jones</u>, to every step of the decision.  <u>See</u>, <u>e.g.</u>, <u>Rivera v. Commissioner</u>, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  <u>Id.</u>

D. <u>Plaintiff's Appeal</u>

On appeal, Belkowski makes four arguments; the first three all relate to the residual functional capacity determination and will be considered together.  Belkowski's challenge to the ALJ's decision can be summarized as follows: 1) the first three arguments contend that the ALJ failed to properly determine Plaintiff's residual functional capacity at step 4; and 2) the ALJ

improperly discredited Plaintiff's subjective complaints of pain.  The parties thus do not dispute the ALJ's determinations at the first through third steps of the evaluation process.

      1.      The residual functional capacity determination

Plaintiff argues that the ALJ erred in assessing his residual functional capacity at step four.  At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform "light work."  (Tr. 25.)  Comparing this residual functional capacity to the demands of Plaintiff's past relevant work as a truck driver, the ALJ determined that Plaintiff did not have the residual functional capacity to perform his past relevant work, and the analysis moved to step five.  (Tr. 26.)  At step five, the ALJ concluded that, based on Plaintiff's residual functional capacity and other factors, the Medical-Vocational Guidelines showed that jobs that Plaintiff is able to perform exist in the national economy in significant numbers.  (Tr. 27.)

On review, the focal question for this Court is whether the residual functional capacity determination, performed at step four, is supported by substantial evidence, such that it was not error to rely on it at step five.  Although, at step five, the burden of proof shifts to the Commissioner, 20 C.F.R. § 404.1512(g), at step four, when the residual functional capacity determination is made, the burden of proof rests with the Plaintiff.  Plaintiff thus has the burden of proving that he has a disabling residual functional capacity.  20 C.F.R. § 404.1512(c).

The ALJ considered evidence relevant to the residual functional capacity determination from four sources: 1) treating physician Dr. Conte; 2) treating physician Dr. Parikh; 3) medical consultant Dr. Lewis; and 4) Plaintiff.  On the whole, Plaintiff disputes how the ALJ weighed this evidence, but also argues that the ALJ should have obtained evidence on his residual functional capacity from a vocational expert and erred by failing to do so.

As authority for his contention that the ALJ should have obtained evidence from a

vocational expert, Plaintiff relies on Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) and 20 C.F.R. § 404.1566(e).  Plaintiff here has confused step four with step five.  Neither the cited reference to the C.F.R. nor Sykes gives a vocational expert any role in the residual functional capacity determination at step four.  Rather, both authorities deal with the use of an expert in the step five determination of numbers of jobs existing in the national economy.

Moreover, Sykes stands for the proposition that, when a claimant has both exertional and non-exertional impairments, the Commissioner cannot rely on the Medical-Vocational Guidelines alone at step five, and must obtain "the testimony of a vocational expert or other similar evidence."  Id. at 273.  Thus, for Sykes even to be relevant to the step five determination, Plaintiff must have shown a combination of exertional and non-exertional impairments at step four.  Plaintiff bears the burden of proof of a non-exertional impairment and yet, in his brief, Plaintiff offers in support only one single-sentence footnote with a conclusory allegation of non-exertional impairments.  (Pl.'s Br. 22 n.44.)  Moreover, Plaintiff does not even claim in this appeal to be challenging the ALJ's not finding any non-exertional impairment.  In the absence of a finding of a non-exertional impairment, the ALJ would have had no cause to base the step five determination on a combination of exertional and non-exertional impairments.  This Court finds that the ALJ did not err by not obtaining testimony from a vocational expert.

In arriving at the determination that the Plaintiff had the residual functional capacity for light work, the ALJ considered the reports of the treating physicians Dr. Conte and Dr. Parikh, as well as the subjective reports of the Plaintiff, and gave these reports less weight than the report of medical consultant Dr. Lewis.  In the Third Circuit, it is well-settled that this Court is not empowered to re-weigh the evidence or substitute its conclusions for those of the fact-finder. Williams v. Sullivan, 970 F.2d at 1182.

The ALJ considered and appears to have relied upon the residual functional capacity evaluation of Dr. Lewis.  Dr. Lewis evaluated Plaintiff on October 29, 2003 and made an assessment of the components of Plaintiff's residual functional capacity that is identical to the conclusions of the ALJ.  (Tr. 25, 166.)  This alone constitutes substantial evidence, as it is "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that Plaintiff retains the residual functional capacity to perform light work.  Richardson v. Perales, 402 U.S. at 401.

Furthermore, the ALJ clearly explained the basis of his decision to give lesser weight to the reports of the treating physicians and the subjective reports of the Plaintiff.  In brief, as to Plaintiff's subjective complaints, the ALJ found that they were not entirely credible in light of the objective medical evidence provided by the reports of the treating and examining physicians.  (Tr. 24.)  As to the reports of Dr. Conte, the ALJ noted that Dr. Conte stated that he could not provide a medical opinion to the Division of Disability Determination Services about Plaintiff's capacity to perform work-related activities on March 30, 2004 (Tr. 248), but did provide such opinions to the Division of Family Development on November 28, 2003 and June 30, 2004.  (Tr. 194, 238.)[3]  The ALJ gave Dr. Conte's opinions lesser weight because of this inconsistency.  As to the July 1, 2004 report of Dr. Parikh, the ALJ stated that Dr. Parikh's conclusions about Plaintiff's capacity for work activities were unsupported by his own medical findings.  (Tr. 25,

---

[3] Furthermore, in the opposition brief, the Commissioner points to the reports Dr. Conte submitted to the Bergen County Board of Social Services on April 4, 2003 and July 25, 2003. (Tr. 138, 144.)  In these reports, both made during the period of claimed disability, Dr. Conte indicated that Plaintiff's only physical limitation was that he "is not encouraged to drive due to increase [sic] vertigo."  Id.  This both supports the ALJ's finding that Dr. Conte's reports were inconsistent and provides evidence supporting the ultimate conclusion that Plaintiff was not disabled.

10

230-237.)  The ALJ gave Dr. Parikh's opinion lesser weight because of this inconsistency.

Plaintiff faults the residual functional capacity determination on two grounds.  First, Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence, contending that the ALJ did not give the opinions of the treating physicians controlling weight, pursuant to 20 C.F.R. § 404.1527(d)(2).  The ALJ's determination, however, meets the requirements of § 404.1527, since the regulation requires that the opinions of treating physicians be given controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(d)(2).  Because the ALJ found that the opinions of Drs. Parikh and Conte were either not well-supported or were inconsistent with other substantial evidence in the record, he was not required to give them controlling weight.

Second, Plaintiff contends that the ALJ's residual functional capacity determination was not based on the opinion on any treating or consultative physician.  This is incorrect.  The ALJ's determination was based on the opinion of consultative physician Dr. Lewis.

Additionally, Plaintiff argues generally that the ALJ erred by failing to mention his work history in assessing his credibility as a witness.  Plaintiff does not link this to any specific issue, nor explain how this, if true, materially impacted the evaluation process or the conclusion. Plaintiff thus fails to give this Court an argument amenable to meaningful consideration. Moreover, the ALJ clearly explained his reasoning in assessing Plaintiff's credibility, finding that Plaintiff's subjective reports were not supported by the objective medical evidence.  Plaintiff offers no ground for this Court to conclude that consideration of Plaintiff's work history would have materially affected the credibility determination or the ALJ's final conclusion.

Examining the evidence in the record as a whole, this Court finds that the ALJ's

11

determination that Plaintiff retains the residual functional capacity to perform light work is supported by substantial evidence.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: September 22, 2006

s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.
